UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANENE M.,[1] | ) |
| | ) |
| Plaintiff, | ) No. 22-cv-1626 |
| | ) |
| v. | ) |
| | ) Magistrate Judge Keri L. Holleb Hotaling |
| MARTIN J. O'MALLEY, Commissioner | ) |
| of the Social Security Administration,[2] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeanene M. appeals the decision of Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment [Dkt. 14] is GRANTED; Defendant's motion for summary judgment [Dkt. 16] is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

I.    BACKGROUND

    A.    Procedural History

On May 30, 2019, an ALJ denied Plaintiff's previous November 29, 2017 application for disability insurance benefits ("DIB"). [Administrative Record ("R.") 134-46.] On July 2, 2019, Plaintiff filed a second application for DIB as well as an application for supplemental security income ("SSI"), both alleging disability beginning on May 31, 2019. [R. 354-64.] At one point, Plaintiff's file indicates she was deemed disabled, a finding which appears to have been based at

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] On December 23, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration; pursuant to Federal Rule of Civil Procedure 25(d)(1) he is substituted for his predecessor, Kilolo Kijakazi, as the proper defendant for this action.

least in part upon an opinion provided by an agency consultative psychological assessor who had opined Plaintiff could only perform simple tasks with two or fewer steps. [*See* R. 203-04, 207-09, 211, 230-32, 234.] But, prior to effectuation of a disability determination, Plaintiff's file was reviewed by the SSA Office of Quality Control,[3] which obtained a consultation from a psychological contractor regarding the original psychological assessor's opinion about Plaintiff's abilities. [R. 152, 171, 190, 201-02, 213, 224-25.] After the review, the original agency consultative psychological assessor issued another opinion in which he removed the limitation on task complexity he had included in his first assessment. [R. 164, 183-84.] Plaintiff's applications were then denied initially and upon reconsideration. [R. 170, 189, 254, 271.]

Following an Administrative Hearing, Administrative Law Judge ("ALJ") Deborah E. Ellis issued a June 9, 2021 decision that Plaintiff was not disabled. [R. 26-41.] On January 28, 2022, the Appeals Council denied Plaintiff's request for review [R. 1-4], rendering the ALJ's decision the final decision of the Commissioner, reviewable by the district court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2004). Plaintiff filed this lawsuit seeking review of the ALJ's decision [Dkt. 1], and the case was reassigned to Magistrate Judge Keri L. Holleb Hotaling when she took the bench on August 10, 2023 [Dkt. 21].

B.     **The ALJ's Decision**

The ALJ mentioned that Plaintiff's file had been subjected to an SSA Office of Quality Control review [R. 39] but did not discuss the review. The ALJ analyzed Plaintiff's claim following the SSA's five-step sequential evaluation process to determine whether Plaintiff was disabled at the relevant time. [R. 26-41.] The ALJ found at step one that Plaintiff met the insured

---

[3] According to the Social Security Administration's Program Operations Manual System ("POMS") GN 0440.008, entitled "Quality Review Process," "[t]he Office of Quality Review (OQR) examines a sample of cases selected from adjudicating components, prior to effectuation, to ensure determinations comply with federal guidelines." POMS GN 0440.008A. A quality control reviewer may obtain "a consultation from a medical contractor (MC) or psychological contractor (PC)" during the review process, *id*. at B4, which occurred here.

2

status requirements of the Social Security Act through June 30, 2023 and had not engaged in substantial gainful activity since her alleged onset date of May 31, 2019. [R. 29.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: diabetes mellitus; peripheral neuropathy; depression; anxiety; and PTSD. [R. 29-33.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 34-35.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform "work at the light exertional level with . . . nonexertional limitations" to "avoid concentrated exposure to temperature extremes, vibration, heights, and moving mechanical parts" and avoid "tandem work" and have only "occasional interaction with coworkers, supervisors and the public." [R. 35-40.]. At step four, the ALJ concluded that Plaintiff would be able to perform past relevant work as a "machine picker, industrial truck operator" as actually performed. [R. 40-41.] At step five, the ALJ concluded that Plaintiff is not disabled under the Social Security Act as to either her DIB or SSI applications. [R. 41.]

**C.     Standard of Review**

Judicial review of the ALJ's decision is confined to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002); *see also* 42 U.S.C. § 405(g). The Court does not try the case de novo or supplant the ALJ's findings with the Court's assessment of the evidence, *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000), but the Court must "review the entire record," *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020), and remand if the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Steele*, 290 F.3d at 940. The ALJ must, at minimum, both develop a full and fair record and "build an accurate and logical bridge between the evidence and the result [so as] to

afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *see Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (explaining that, despite "deferential standard of review, an ALJ 'must provide a logical bridge between the evidence and [her] conclusions'") (alteration in original). In doing so, the ALJ need not address all record evidence, but her analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

## II. ANALYSIS

This appeal turns on the ALJ's consideration of opinion evidence in assessing Plaintiff's potentially outcome-determinative "paragraph B" mental limitations. In relevant part, Plaintiff argues the ALJ erred in deeming all of the agency consultative medical opinions "persuasive" without noting or addressing significant inconsistencies between the agency consultative psychological opinions as to Plaintiff's paragraph B limitations. [Dkt. 14 at 5-15.] The Court agrees.

"When a medical source provides one or more medical opinions . . ., [the Social Security Administration] will consider those medical opinions . . . together using the factors listed in paragraphs (c)(1) through (c)(5)" with "the most important factors" being "supportability" and "consistency." 20 C.F.R. § 1520c(a), (b)(1). Given the importance of those two factors, the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [an applicant's] determination or decision." 20 C.F.R. § 1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Julius A. H. v. Kijakazi*, No. 21 C 4216, 2023 WL 8527273, at *2 (N.D. Ill. Dec. 8, 2023) (citations omitted); *see* 20 C.F.R. § 404.1520c(c)(1). "Consistency assesses how a medical opinion squares with other evidence in

4

the record." *Julius A. H.*, 2023 WL 8527273, at *2 (citations omitted); *see* 20 C.F.R. § 404.1520c(c)(2).

Thus, an ALJ must minimally articulate the reasoning for a decision to accept or reject a medical opinion, including the supportability and consistency of the opinion. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) ("An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence.") (citations omitted); *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) ("We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies."); *Diane S. v. Kijakazi*, No. 21-CV-1505, 2023 WL 8372040, at *3-4 (N.D. Ill. Dec. 4, 2023) (explaining that "ALJ was allowed to discredit Dr. Anwar's opinion if it was inconsistent internally or otherwise, but he was required to minimally articulate his reason for doing so") (citations omitted).

Here, the ALJ did not fulfill this duty. In a four-page discussion, the ALJ set out Plaintiff's mental health treatment records and analyzed the so-called "paragraph B" criteria used to evaluate mental disorders in four broad functional categories, which need not be enumerated here. [R. 30-33.] The ALJ found Plaintiff had only mild limitations and "only slight abnormalities having such minimal effects that they would not be expected to interfere with the ability to work" [R. 32-33.]; she did not mention any limitations as to the complexity of tasks Plaintiff could perform. Later in her opinion, in a discussion of Plaintiff's physical abilities and limitations, the ALJ indicated her "consider[ation of] the opinions of the State agency medical consultants at the initial level, OQR review and reconsideration level, respectively[]." [R. 39.] The ALJ did not detail the four reports of the psychological consultants, which, as detailed below, are inconsistent with each other.

First, on October 2, 2019, Joseph Mehr, Ph.D., opined that Plaintiff had a mild mental limitation as to one paragraph B criterion and moderate limitations as to the other three criteria,

5

with "sustained concentration and persistence limitations"; he also opined, "based upon imitations in her understanding and memory, she would "ha[ve] the capacity to be able to meet the basic mental demands of competitive, remunerative, simple one to two step tasks[.]" [R. 207-09.] The foregoing conclusions apparently would have resulted (perhaps in conjunction with other evidence) in "a fully favorable medical-vocational allowance." [*See* R. 152, 190, 209-12.] A favorable finding, however, was never issued because, before effectuation, the SSA Office of Quality Control Review "charged an error."[4] [R. 152, 171, 190, 213.]

Second, during the quality control process, G.R. Ibarra, M.D., reviewed Dr. Mehr's conclusions and found "no evidence to support the notion that [Plaintiff] was limited in the complexity of tasks she can perform." [R. 201-02, 224-25.] Based upon this opinion, the OQR Review directed a "sequential evaluation, utilizing the assessment from the regional psychiatric contractor[,]" "new assessment documents indicating [Plaintiff] is capable of both simple and detailed work, currently and by duration[,]" and a "personal decision notice (PDN) to [Plaintiff] and her attorney representative fully explaining this decision." [R. 152.]

Third, after the quality control review, on November 14, 2019, Dr. Mehr issued another psychological opinion, in which he emphasized that Plaintiff's psychological condition was "non-severe" and stated that she had mild limitations in all four paragraph B criteria and her "impairment . . . does not limit the complexity of tasks that she can perform." [R.164-65, 183-84.]

Fourth, on July 9, 2020, at the reconsideration level, Steven Fritz, Psy.D., found mild limitations in the four paragraph B criteria and stated "[t]he prior determination was substantively and technically correct and the prior decision rationale correctly presented and resolved all pertinent issues to be adjudicated." [R. 248-50, 265-67.]

---

[4] The Court understands this to mean the reviewer found the determination did not "comply with federal guidelines." POMS GN 0440.008A.

Although the ALJ in her opinion indicated that she had "considered the opinions of the State agency medical consultants at the initial level, OQR review and reconsideration level," she did so in the context of discussing Plaintiff's physical limitations and specifically found the medical consultants' opinions regarding Plaintiff's physical capabilities and limitations "persuasive" as "consistent with the general pattern of evidence contained in the hearing level record."[5] [R. 39-40.] The ALJ did not mention Drs. Mehr, Ibarra, or Fritz by name in her opinion; nor did she detail their opinions or acknowledge the differences between Dr. Mehr's October 2, 2019 opinion (in which he found mild and moderate paragraph B limitations and limited her to "simple one to two step tasks") and his November 14, 2019 opinion (in which he found that Plaintiff had only mild paragraph B limitations and no limitations on task complexity) or differences between either of his reports and those of Dr. Ibarra or Dr. Fritz; these opinions, as far as the record reflects, are based upon the same underlying medical records. The ALJ's analysis of the paragraph B criteria appears to align more closely with the reports during and after the quality control process, yet she did not explain, even in general terms, what she found persuasive or unpersuasive about the opinions or their consistency with the record or her apparent rejection of Dr. Mehr's October 2, 2019 opinion.

Defendant defends the reliance he assumes the ALJ placed on the post-October 2, 2019 agency psychological assessments. Defendant characterizes Dr. Mehr's two opinions as: (1) an October 2, 2019 "original assessment" that "was never effectuated" due to the quality review finding of error; and (2) a November 14, 2019 "corrected assessment" that "became the final determination at the initial level of consideration." [Dkt. 17 at 7.] Defendant supports this argument

---

[5] Given the context of these statements, it is not clear to the Court that the ALJ was referencing the psychological opinions along with the other medical opinions; Plaintiff seems to think that she was, as Plaintiff asserts that the ALJ "lumped . . . together" all medical and psychological opinions in a three-sentence analysis. (Dkt. 15 at 4.) The Court need not resolve that question under the circumstances.

with just a general citation to the entirety of POMS GN 04440.008 and citations to a few pages of the record and insists that the ALJ properly "excluded" Dr. Mehr's initial opinion "from [] analysis." (*Id.*)

As Plaintiff points out, though, the POMS citation does not address the effect of quality review upon an ALJ's analysis, and "Defendant cites no authority which indicates that the ALJ cannot or should not review a prior [] opinion" after a quality review. [Dkt. 18 at 102.]

The Court discerns no support for Defendant's arguments in its legal citation. POMS GN 0440.008 suggests that the quality review process is intended to occur "prior to effectuation" of a disability determination, POMS GN 04440.008A, but does not address how any finding of error affects the opinions already in the record. Further, a medical opinion would not seem by its nature to require effectuation.

Nor is Defendants' position consistent with the regulations, which explicitly direct consideration of the supportability and consistency of "one or more medical opinions" from "a medical source[,]" 20 C.F.R. § 1520c(a), (b)(1), or case law in which courts have approvingly noted that an ALJ considered both the pre- and post-quality control review opinions of agency consultants when weighing the record evidence. *See Welsch v. Kijakazi*, No. 4:22-cv-00687-AGF, 2023 WL 5377722, at *2 (E.D. Miss. Aug. 22, 2023) ("The ALJ discussed both of Dr. Day's opinions [an initial opinion and amended opinion issued after a quality review] and found that the amended opinion was persuasive as it was supported by the medical evidence and 'in particular supported by the mild to moderate imaging evidence' discussed by the ALJ throughout his opinion."); *Yoap v. Kijakazi*, No. 20-C-1337, 2022 WL 873031, at *5 (E.D. Wis. Mar. 24, 2022) (noting that ALJ had given "little weight to Dr. Donahoo's February 26, 2014 determination and partial weight to the revised determination" issued after the quality review process). These cases

8

suggest that it is appropriate for an ALJ to consider opinions generated before and after the quality review process.

Without more, the regulations and case law lead the Court to conclude that the ALJ should have considered both of Dr. Mehr's opinions, including their supportability and consistency, *see* 20 C.F.R. § 1520c(a), (b)(1); *Welsch*, 2023 WL 5377722, at *2; *Yoap*, 2022 WL 873031, at *5, yet it is not clear that she did so, despite her blanket statement that she had "considered" opinions at all levels [R. 39]. There are substantial unacknowledged inconsistencies among the psychological opinions in the record, some portions of which would be favorable to Plaintiff if accepted.

Because it is not clear from the record which of those psychological opinions the ALJ accepted or why, she did not build the required accurate and logical bridge between the evidence and her conclusions on Plaintiff's paragraph B limitations so as to allow a meaningful judicial review. *See Julius A. H.*, 2023 WL 8527273, at *5 (remanding case because "the ALJ did not build an accurate and logical bridge [for] his decision to reject [a doctor's] opinion" and noting that "the ALJ should take the opportunity on remand to explain" his conclusion that psychological consultants' opinions were "persuasive" yet he had not "adopt[ed]" restrictions they had recommended for applicant); *Diane S.*, 2023 WL 8372040, at *3-4 ("The ALJ did not properly explain either of his reasons for discrediting [doctor's opinion], which strongly supported Plaintiff's claim of disability, and therefore the ALJ failed to 'build an accurate and logical bridge between the evidence and the result [so as] to afford [Plaintiff] meaningful judicial review of the administrative findings,' requiring remand.") (citations omitted); *Harris v. Saul*, No. 18-CV-1930, 2020 WL 221964, at *7 (E.D. Wis. Jan. 15, 2020) (remanding matter to Commissioner in part because ALJ's reasons for resolving conflict between two consultative psychological examiner opinions were "inadequate to support an accurate and logical bridge between the evidence and his

conclusion"); *Murphy v. Berryhill*, No. 1:18cv118, 2019 WL 1123511, at *8, 12-13 (N.D. Ind. Mar. 11, 2019) (holding that ALJ "failed to acknowledge or did not notice" internal inconsistencies in opinions of state agency psychological consultants' medical opinions and thus failed to resolve potentially decisive conflicts in record); *see also Cora A. v. Kijakazi*, No. 2:21-CV-314-JVB, 2023 WL 2401298, at *2-4 (N.D. Ind. Mar. 7, 2023) (noting that "[c]onsultative examiners are agency doctors and unlikely to exaggerate an applicant's disability" and holding ALJ erred in failing to explain rejection of agency's examining psychologist). Because acceptance of Dr. Mehr's October 2, 2019 assessment may have supported a determination that Plaintiff was disabled [*see* R. 152, 190, 209-12], the Court is unable to conclude the ALJ's error was harmless.

The ALJ must minimally address the opinion evidence in the record in the manner directed in the regulations and connect her conclusions to the evidence. The Court stresses that the foregoing should not be construed as an indication the Court believes Plaintiff is disabled or should be awarded benefits. The Court leaves those issues to be determined by the Commissioner after further proceedings. Given the Court's remand on the above grounds, the Court does not reach the remaining issues Plaintiff raises in this appeal.

### III. CONCLUSION

For the reasons detailed above, Plaintiff's motion for summary judgment [Dkt. 14] is granted, and the Commissioner's motion [Dkt. 16] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED: January 16, 2024

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge